Judge Marshall
delivered the Opinion of the Court.
These bills were filed separately by Campbell and Horine, creditors of Charles M. Davenport, deceased, to subject the same property to the payment of their respective demands, on the ground that it had been fraudulently conveyed by Davenport, in his lifetime, and is still subject to the payment of his debts. The two causes were heard upon the same depositions in the Circuit Court, and were argued together in this Court; and as they *264 present substantially the same questions, they will be considered and disposed of together, in this opinion— noticing, when it. may be necessary, such differences as exist between them.
The bills allege that Davenport died indebted to the complainants in certain sums evidenced by writing; that after his death, suits at law were brought against G. W. Elly, his administrator, and Jane Davenport, his only heir, who is an infant; that the heir having pleaded ‘nothing by descent,’ and they knowing no evidence to disprove the plea, judgment was obtained against the administrator alone, on which executions had issued and been returned, in effect, “nulla bona.” The complainants then allege that Davenport, before his death, had, without valuable consideration, nnd for the fraudulent purpose of hindering and delaying themselves and other creditors, executed a mortgage conveying to his mother-in-law, Jane Harrison, for the security of an alleged loan of three thousand dollars, certain property, real and personal, which is stated in one of the bills to be all that he had which was subject to execution, oí which could have descended to his heir, and after putting appropriate interrogatories, they pray that the property thus fraudulently conveyed, may be subjected to the satisfaction of the debts set up in the bills.
The administrator and heir of Davenport, and Jane Harrison, the mortgagee, together with the widow of Davenport and her second husband, William Morton, are made defendants; and the bill of Campbell prays that, if the widow be entitled to dower, it may be assigned to her before the sale of the real estate contained in the mortgage.
The defendants, except the administrator, deny the fraud. The heir relies on the judgments in her favor, in the actions at law, the records of which are exhibited by the complainants. Mrs. Harrison, the mortgagee, insists upon the fairness and validity of the mortgage, and Morton and wife pray that their interest in right of the latter to dower, may be protected. The Circuit Court, being of opinion that the mortgage was fraudulent, and having first assigned dower to Davenport’s *265 widow, according to the report of a commissioner appointed to lay it off, proceeded to decree, in each case, the sale of the mortgaged property, or so much as might be necessary for the satisfaction of the demands set up in the bill — ordering the personalty to be sold first, and then a slave included in the mortgage, and then the land, exclusive of the dower, and finally, if necessary, the reversionary interest in the part assigned for dower.
A mortgage executed by one to his mother-in-law to secure the payment of 3000 dols., held creditor” because: (i) the greatly embarrassed’ by debts, some of which were in executions; (2) chided every artide ofhispropexJcudon;”^ 3*) ^ tinTbasis^S loan of a few in law, to mortgage his and thus procreditors He had made a pre moth front law, on the same consideration, & had endorsed on it the words “no fraud ” (5) The mortgagee knew the embarrassed condition of the mortgagor, and that the deed covered all his property at about its full value, and probably also, that there had been a prior mortgage, and the reason for executing the second one; 16) the inference that she knew the fraudulent intent of the mortgagor, authorized by the circumstances, and by his declarations, in her presence, was fortified by the failure’of proof of a greater amount loaned than §500; (7) it was attempted to make out the balance of the consideration stated in the mortgage, under the allegation that the mortgagee had, at various times, in years past, advanced to the mortgagor small sums of money, but what these amounted to was not shown; no obligation was taken for their repayment, and it did not even appear probable that there was an expectation of repayment.
From each of these decrees the defendants have appealed ; and now contend that the decrees should be reversed on several grounds, of which the first is: — That , , . the alleged fraud is not sufficiently proved; and that there should, therefore, have been no decree for the sale i , either of the personal or real estate conveyed by the mortgage. But the evidence sufficiently establishes— (f) that Davenport was greatly embarrassed by impending debts, some of which were in the form of judgments and executions; (2) that the mortgage included every article of property which he possessed, and which was subject to execution; (3) that he had for some time before the execution of the mortgage, entertained the design of procuring the loan of $>300 or $>400, from Mrs. Harrison, and of mortgaging to her for its security all his property, at its full value, for the purpose of protecting it from his creditors, until he could pay his debts by the proceeds of his practice as a physician; (4) that upon a previous mortgage executed between the same parties, and on the same consideration, Davenport had endorsed the words “no fraud,” which .was the cause of the execution of the present one; (6) the mortgagee knew the embarrassed condition of Davenport; she knew that the mortgage covered all his property, at *266 about its real, value, and she may be presumed to have known, that this was a second mortgage, and the reason of its being executed. (6) From these circumstances, connected with and corroborating the testimony of a witness who states that the mortgagor avowed, in the presence of the mortgagee, before the date of the mortgage, his intention, on the basis of a loan from her of three hundred dollars, to secure his property from his creditors, by mortgaging it at its value, it may be inferred, with reasonable certainty, that, she knew of his fraudulent design. This inference is strengthened by her failure to prove a loan, or loans, corresponding, in amount, with the sum secured by the mortgage. The proof may be deemed sufficient to establish the loan of from three to five hundred dollars, at some period not long prior'to the mortgage; but as to the rest, although it is stated by the widow of Davenport, that her mother had alt various periods, in the course of ten or twelve years, made numerous -small advances to him by way of loan, even she does not venture the opinion that these advances approximated the sum of three thousand dollars — and it is very apparent from the answer of the mortgagee herself, that whatever those, small sums may have amounted to, she had made no account or charge of them at the time, .and had taken no note for their repayment, and that in stating her belief that they amounted to three thousand dollars, she referred to and relied upon the statement of Davenport, and his acknowledgment in the mortgage, that that sum had been loaned.— And looking to the relation subsisting between the parties, to the certainty of. a fraudulent design on the part of Davenport, and the strong probability that she was not ignorant of it, it cannot be admitted that a deed executed, under so many suspicious circumstances, can be supported either by his acknowledgment, or by any mere conjecture which we might make as to the sum due. It is by no means certain that these small advances were made with the intention and expectation that re-payment would be exacted; the probability is otherwise. And their amount being, moreover, wholly uncertain, the very fact of gathering them up, and fixing *267 their amount by guess, or vague recollection, at about the value of a debtor’s whole property, and acknowledging that amount as a present loan, to form the consideration of a mortgage covering the whole property for three years, is itself a circumstance strongly tending to prove that the deed was -made and received, in part at least,, for the purpose of securing the property to the mortgagor, by putting it out of the reach of his creditors..
In an action at law against the heir, upon the issue of “riens per descent, ’ ’ he cannot be charged, as for assets by descent, with land fraudulently conveyed by his ancestor to a third person, and held by him to the exclusion of the-heir;, nor upon such, an issue can the question of fraud in the, conveyance be raised or decided;' The creditor’s remedy .is against the grantee, or thing granted, & in equity only. But—
Quere — would the rule be the same, where the. heir is himself' the party really benefitted by the. conveyance
We are therefore of opinion, that the evidence is sufficient to authorize the conclusion that the 'mortgage was fraudulent and void as to the creditors of Davenport; and that, so far as the decree depends, upon the establishment of the fraud, it is not erroneous..
Second. It is,, however, contended, in the second place, that, if the mortgage be fraudulent, still the complainants are precluded, from the relief sought-, so far as the land is concerned, by the verdicts and judgments in favor of the heir, upon the issues of ‘nothing by descent,’ and that the simple allegation that they did not know of any evidence by which to disprove the plea, is not sufficient to. remove the bar, or to authorize the chancellor to'enquire into the fraud, and to relieve against it.
If the right of the complainants to subject the land to their debts, depended upon their showing that it had descended to the heir, the objection just stated would be entitled to great .force. And in oi’der-to give it this force, it is maintained in argument, that, if the mortgage was fraudulent, and therefore void as to creditors,, the necessary consequence is that, as to the creditor, and-his remedy, the land, in estimation of law, did descend to the heir, constituting assets in his hands, which might be the foundation of a judgment against him, and which would be accessible by means, of such a judgment only; and that consequently, the question of fraud was necessarily involved in the issue of mothing by descent, and is, as to the land,, concluded by it.
But no case has been referred to, in- which such a doctrine has been practically adopted, and the heir, against his plea of nothing by descent, subjected to a judgment for the debt of his ancestor, on the mere proof that this indebted ancestor had made a fraudulent conveyance ta *268 a stranger; and whether we refer to the definition and examples of such assets by descent, as would, by the common law, authorize a judgment against the heir, on the issue of rieras per descent; or to the nature and effect of the judgment itself, which, in such a case, if the issue were found against him, was personal against the heir, for the whole debt; or to the principle which discharged the heir from liability for land which had actually descended to him, if he had aliened it, honajide, before action brought — we cannot admit, without the express authority of adjudged cases, that the mere fraud of the ancestor, in making’ a conveyance, would make the heir liable to a judgment on the ground that the land had descended to him as assets, when in fact the land has not come to him at all, and when the conveyance itself, though fraudulent as to creditors, bars him from all claim or interest in the land.
It is true, the judgment, as now rendered in this State, goes not against the heir personally, but Only against the estate descended; still it is based upon the fact, which, on the issue of nothing by descent, must be proved, that estate has descended to him; and he may ultimately be made personally liable to the extent of the assets proved. Upon principle, therefore, it would be no more appropriate, and scarcely less unjust, under the present, than under the ancient form of proceeding, to charge the heir with a judgment on the ground that lands fraudulently conveyed by his ancestor, must be deemed to be assets in "his hands, by descent, though he have no actual or possible interest in them. It is, perhaps, a moré striking and more forcible objection to the application of the principle contended for, to such a case, that putting out of view the personal liability that may be imposed upon the heir without any just basis or consideration, and regarding the action and judgment against him, as merely a-proceeding against the land itself, and to determine its liability, this anomaly would be presented. First — The heir, being without interest in the land, is a stranger to the debt and the land, and is yet made the medium of ascertaining the debt, and giving judgment against the land. Second — The question *269 of fraud in the ancestor’s deed, on which the liability of the land depends, would be tried when the only person interested in defending the land, is not and cannot be a party to the issue. Third — Consequently, the judgment against the land would not be conclusive, and when the creditor should attempt to avail himself of it, by levying his execution, the person holding and claiming it under the deed, might and would contest its liability, and the question of fraud must be tried again, between new parties, upon new proof, and with perhaps a different result. In all this, there is certainly a flagrant departure from the directness and simplicity of the common law, which admits of no proceeding by which land is to be affected, unless the tenant or owner is a party, and which has for its object, in every trial, the conclusive determination of the matter in issue.
The passage from Shepherd’s Touchstone (page 66,) referred to in support of the argument now under consideration, does not, in our opinion, furnish authority for the doctrine contended for. The author there says: “ if a man, a little before his death, make a conveyance “ of his land to his children, with a proviso to make it “ void at his pleasure, and he take the profits as his own; u or make a conveyance of it to friends, to the intent “ that it shall not be subject to the payment of his debts, “ having bound himself and his heirs by any specialty; “ or to the intent that a warranty with assets shall not “ bind his son for other land, or the like; in this case, “ the conveyance shall be void as to those whose relief “ is upon the land by descent.” The main principle here asserted is that, the fraudulent deed is void after the death of the grantor, which is undoubtedly true. It may also, be inferred that, in the cases put, the remedy upon the land is by descent; and that in those cases, the author means to say that, notwithstanding the conveyance of the title by deed, the‘land, in consequence of the fraud, is adjudged to have descended, so as to allow to the person intended to be affected by the fraud, his remedy by descent: that is, against the heir. But it is manifest, from the cases put, as well as from the only one referred to in the margin, (2 Dyer, 295,) that the *270 deeds referred to must be understood to be such as are intended for the especial benefit of the heir, and such as, if allowed to be effectual, would secure to him, either the land itself or the issues and profits. And the very' essence of the fraud consists in the intention and the attempt to prevent a descent, (which would make the heir and the land liable to debts and bind them by warranties,) by conveying the title to the heir himself, or to some friend, upon secret trust, for him — while the land itself, or its profits, should be enjoyed by him, as fully as if there had been no such deed.
We do not understand this authority as going farther in its application to the present question, than to assert that the heir, being in the enjoyment of the land, the descent of which would make him liable for the debts, or bind him by the warranty of his ancestor, shall not protect himself and. the land, and thus • effectuate the fraud, by showing a mere fraudulent conveyance of the title, to disprove a descent; and that if, under such circumstances, he sets up the conveyance, the party claiming against it, may show the fraud, and defeat its operation.
In such a case, there was no injustice in- rendering the heir personally responsible for the land as assets by descent: nor, as that was the tenor and effect of the' judgment against him, was there so obvious an anomaly in trying the question of fraud, with a view to the question of descent or no descent, where the grantee of the fraudulent deed was not a party to the issue, as there would be under our form of proceeding, where the direct effect of the judgment is, not to render the heir per-personally liable, but to give remedy against the land.
But the authority does not support the broad position that, if the debtor, make a fraudulent deed and die before judgment, the fraud may be proved in an action against' the heir, with the effect of authorizing a judgment against him, as for land descended, though the land be held and claimed by the grantee, to the exclusion of the heir. And if such were the proper inference from the passage quoted, it is not borne out by the case cited by the author, and could not, for the reasons above stated, be considered as authoritative evidence of the law.
*271 Gooche’s case, reported in 5 Coke’s Rep. folio 60, referred to in support of the argument under consideration, and especially to show that ‘the question of fraud was necessarily involved in the issue of nothing by descent’ in this case, falls far short of establishing that point. That was an action against the heir, for the debt of his ancestor. Upon the issue of ‘news per descent,’ which, in effect, asserted nothing more than that the heir had nothing by descent at the commencement of the action, it was proved, and admitted, that land had, in fact, descended to him, in fee simple, from the indebted ancestor; but the heir, to show that he had nothing when the action was brought, set up, not the deed of his ancestor, but his own feoffment of the lands which had descended; and the plaintiff was permitted to show that the feoffment was made of covin, to defraud him of his action, and therefore void; whereupon, he had judgment. The other cases stated in Roberts on Fraudulent Conveyances, 602 to 604, are to the same effect. Those cases, and the case in 2 Dyer, 255, eited by the Touchstone, show that the question of fraud might arise under the issue of ‘news per descentf and they show the manner and occasion of its coming up. But they give no countenance to the idea that the plaintiff can set up the deed of his debtor, and show its fraudulency, as the ground of his action against the heir; much less do they prove that he is bound to do so.
But, unless he has the right to do this: nay, unless, when the heir himself does not set • up the deed, he is bound to do it, how can the fraud be in issue?
In the case of Ralls vs. Graham, 4 Mon. 122-3, our predecessors have expressed their opinion, in very clear and decided terms, upon all the questions now under consideration. After stating that, as to creditors &c. the grantor making a fraudulent conveyance is adjudged still to hold the title, they say, “but this reservation is not such title in the grantor as can be transmitted by devise or pass by descent;” that hence, “in a suit against the heir or devisee, the former may plead nothing by descent, and the latter nothing by devise, and it cannot be replied that his ancestor or testator fraudulently con *272 veyed an estate to another with which the heir or devisee can be charged;” and they further say that, in case of the death of the grantor, the remedy of the creditor, is not against the heir or devisee, but is “against the grant- or of the invalid grant, or the thing granted.” It is not necessary for us to decide, or to enquire, whether it be universally true that, in case of a fraudulent deed to a third person, the remedy cannot be against the heir, but must be against the grantee, or the thing granted. No such question can, in our, opinion, arise, except in a case where the heir is in reality the party benefited by the deed, though not a party to it, and, in such case, it might be that the remedy against him, is virtually a remedy against the thing granted. ¡
A creditor,whose deceased debtor had, in his lifetime, fraudulently conveyed his land to a stranger; and who has instituted his action at law against the executor and heir, and recovered a judgment against the former, and had an ex'on thereon returned “no property found,” the heir having obtained a verdict and judgment, upon his plea of nothing by descent — may maintain a bill in chancery, unprejudiced by the-verdict at jaw, to subject the land fraudulently conveyed, or render the grantee liable, to the satisfaction ofhis debt.
*272 But the present is, not only not shown to be such a case, but it would seem from the evidence, that the mortgagee is in possession of the mortgaged land since the death of the mortgagor.; and, in her answer, she insists upon the fairness and validity of the mortgage, and thus claims title to herself under it. We are therefore, of opinion, upon principle and authority, that in this case at least, “the remedy upon the land, is not by descent;” that is, it is not against the heir, and therefore, the question of fraud, was wholly out of the issues in the actions at law, and is in no manner affected by the verdicts and judgments, thereon. And further, that those judgments, upon the issues joined, prove nothing more than that the heir had nothing by desceht; and therefore, do not preclude any remedy which the creditor may have against a stranger, nor even against the heir himself, for the subjection of land, which was not legal assets in the hands of the heir.
We are of opinion, also, in accordance with what is said in the case of Ralls vs. Graham, that, in this case, the remedy of the creditor, if he have any, is against the grantee, or the thing granted; and it is certain he has no remedy at law, against either.
The only question then, so far as the interest of the mortgagee is concerned, is, whether the creditor, having obtained an ineffectual judgment against the personal representative of his deceased debtor, and having *273 failed to obtain a judgment against the heir, because he has ‘nothing by descent,’ has remedy in chancery, to subject the land fraudulently conveyed by his debtor, or to render the grantee liable to the satisfaction of his debt. In support of a negative answer to this question, we have been referred to numerous cases in which it has been said that the court of equity will not take jurisdiction to ascertain and enforce a purely legal demand, merely on the ground that a fraudulent conveyance has been made by the debtor, whereby the creditor may or will be obstructed in the collection of his debt. But those are cases in which the fraud could occasion no obstruction to the legal remedy prior to judgment; and go on the principle that, where there is a plain legal remedy, it must be pursued and exhausted before the chancellor will aid it, and that, because it cannot appear satisfactorily that the fraud will actually obstruct the remedy, until it has been so far pursued as to prove ineffectual, unless the fraudulent deed is removed or disregarded, therefore, the chancellor should not interpose at a previous stage. The principle of these cases does not apply to prohibit the interference of the chancellor in such a case as the present, but rather authorizes his interposition at whatever point in the progress of the legal remedy it may appear that the creditor is actually obstructed by the 'fraudulent conveyance or its consequences; and especially when it appears that, in consequence of the fraudulent conveyance and of the condition of the land as held under that conveyance, there is no possibility of obtaining a judgment against the heir, or by any other person by which the land fraudulently conveyed can be subjected to execution. In such a case, the demand, though legal so far as relates to the evidences of its validity and extent, is wholly dependent upon equity for its enforcement and for its ascertainment, except so far as it is ascertained and may be enforced by the judgment against the personal representative. And when it is acknowledged that the deed is void as to the creditor, and that he has the right to subject the land to his debt, but is wholly unable to effectuate this right, or to obtain satisfaction of his debt, nn *274 ]eSg the chancellor will interpose without requiring a judgment which might affect the land, and which cannot be obtained because there is no person liable at law to such a judgment, we think the principles of equity require that the Court should take jurisdiction, though there be no such judgment.
In such case, the fraudulent conveyance being a mortgage, the conclusiveness of the verdict at law obtained by the heir, that no equity of redemption descended to him, is not material, since, as to creditors, the mortgage is void, and no equity whatever results from it.
In a suit in chanky land fraudulently dece^ecT debtor* the mortgagee, the heir of the mortgagor, with his widow and her husband, were made parties The two latter, in their answers, prayed'to be protected in the right of the widow to dower, which the court, without further direct pleadings between the dowress and the other def’ts, assigned to her, and decreed the residue of the land to be sold. On a joint appeal by all the def ts, and the objection of some of them that the court erred in assigning dower, though the right to it was not contested, nor that the proper quantity was not assigned — held that, as all the parties interested were before the court below, and might there have objected to the assignment, which did not appear prejudicial to any, it was too ¡ate to object in this court, to that part of the decree.
Third. It is further objected, that the verdict is conclusive as to the equity of redemption, between the complainants and the heir, and therefore, also, as to the mortgagee. But as, if the mortgage be fraudulent, there is in’fact no equity of redemption as between the creditor and the heir; and, as the question of fraud is not concluded, we do not see the materiality of the position that the verdict is conclusive as to the equity of redemption. Admitting it to be, as perhaps it is, conclusive, that no equity of redemption descended to the heir, it is only conclusive of this, as between the heir and creditors, and not as between the heir and the mortgagees. And, so far from the creditors contesting this point, or claiming any thing against the heir, in consequence of'their having the equity of redemption — they admit they have none, and contend that, the mortgage being void as to them, there is not, as against them, any ■equity of redemption whatever. It may be added, however, on this point, that if, as seems probable from the evidence, the mortgage is for the full value of the property, and the equity of redemption, even as between the heir and the mortgagee, worth nothing, it would not have -authorized a judgment against the heir for any amount, and the jury might,' in such case, find nothing by descent.
Fourth. It is also assigned for error and contended, that 'the decree is erroneous in assigning dower in the mortgaged land to Morton and wife. It is not alleged that they were not entitled fo dower in the mortgaged *275 land; nor that the land assigned is more or less than should have been assigned; but the question made, as we understand it, is whether the Court, having before it all the parties interested in the question, had the power, without direct pleadings between the dowress and others, to assign dower by its decree. It seems to us that the Court might protect the interest of the dowress, as asked to do in the answer of herself and husband, and had the right as the best means of doing so, and also the power in disposing of the land for the purposes of the relief sought, to have the dower separated from the rest of the land, and withheld specifically from sale, and thus to designate what portion of the land should be sold; and, as all the parties interested, were in. a condition to object to the assignment made, either on the ground of inequality, or of want of right, and no such objection was or is made — we think it is too late now to question the propriety of the decree, merely for the want of formal pleadings, between the defendants. It cannot be said that they had no opportunity of making any question on the subject in the Court below. And, moreover, if there be any technical error in the proceeding, the appeal is. joint on the part of all of the defend? ants; and it cannot be presumed that all were injured by it; nor indeed is it shown to have been prejudicial tq any.
That an amended bill which material fact was regulary taken, is not a cause reverse the decree.
Fifth. It is also alleged that the Court erred in tak? ing an amended bill filed in one of the cases, for con? fessed, at the term at which it was filed. This is a mis? take in point of fact, but if it were not, the amended bill referred to, states nothing more than that the complainant did not know at the time of the trial at law, of any evidence by which to disprove the plea of “nothing by descent’ — an allegation which, in the other case, was made in the original bill; and which, on the principles of this opinion, was immaterial in both cases.
Wherefore, the decree in each case is affirmed, with costs.