Chief Justice Marshall
delivered the opinio» of the Court.
Julius Brace and wife and others, the children and heirs of Abraham P. Howell, deceased, filed this petition in ordinary, to recover about twenty-one acres of land, part of a large tract of about 375 acres, which had descended to them from their father, and of which a considerable portion having- been sold under a decree for the foreclosure of three mortgages which he had executed, the residue, of which that now in contest is a part, is claimed to have been sold under two judgments and the executions thereon, against the administrator and heirs of said Howell. The plaintiffs rest their title on the alleged invalidity of these sales, and of the Sheriff’s deed, made to *76 effectuate them. If these are valid, the plaintiffs have no title to the land, and the judgment for the defendants must be affirmed.
1. Of the various objections taken to these sales, the one of the greatest general importance is that which assumes that the 36th section of the general execution law of 1828, which subjects to sale the equity of redemption in mortgaged lands, subjects that interest in the hands of the mortgagor only, and to an execution against himself personally, but not to an execution against his heirs, to whom the equity may have descended. The substantial part of the 36th section, under which the question is made, is that, “when estate, real, personal, or mixed, is held or covered by mortgage, deed of trust or other incumbrance, all the right, title and interest, legal or equitable, which the mortgagor or grantor has in said estate, shall be subject to be levied upon and sold under execution, in the same manner as such property might have been sold, if no such incumbrance had existed, and the purchaser shall take it subject to such incumbrance, and may pay off and discharge such incumbrance, and thereby perfect his title thereto, in the same manner as the grantor or mortgagor, or other person having an equity of redemption therein might do. Provided, however, that when such property is real estate, the mortgagor or grantor shall have a right to redeem it within the year, and if the purchaser shall have paid off the incumbrance, the amount shall also be refunded to him within the year.” The act of 1792, subjecting lands to the payment of debts, (1 Litt. Laws, 128,) enacts in its first section that lands, tenements, and hereditaments shall, and may by virtue of writs of fieri facias be taken and sold in satisfaction of all judgments in a manner hereinafter prescribed. It enacts in the second section, and doubtless as a means of effectuating the enactment of the first, that “the same actions which will lie against executors or administrators, may be brought jointly against them and the heirs, *77 and [or] devisees of the dead person or both. It was decided at an early day in Thomas vs. Marshall, spring term, 1805, that the first section of this act did not embrace equities, but applied to legal rights only, or such title in land, as in case of goods would authorize a levy and sale at common law. If it had been the effect of the first section to authorize the sale under writs of fieri facias of the equitable title or interest of the defendant or debtor, we think it cannot be doubted that the second section would have been construed and understood as furnishing the means of subjecting the same interest to the satisfaction of the ancestor’s’ debt, by obtaining a judgment against his heirs to whom it had descended. The intention was to subject the lands of a debtor to the payment of his debts, and to the extent that lands subject to execution, in the hands of the debtor, had descended to the heirs, the remedy against them in the hands of the latter, while the debt remained unpaid, was intended and understood to be commensurate with that which was given against them, in the hands of the debtor himself. Equitable titles or interests, not being subject to execution under the statute referred to, were not legal assets when descended to the heirs, and were not the foundation of a judgment against him, on the plea of nothing by descent. In the case of Brown vs. Bashford, 11 B. Monroe, 67, it was decided that a resident citizen of this State, could not be made liable here for a simple contract debt of his father, on the ground that lands situated in the State of Ohio had descended to him as heir of his father, principally, because the assets in Ohio could not be reached here, “and therefore do not seem to be the proper ground of a judgment which, according to its terms, indicate its real foundation should be levied on the assets descended.” And the case of Payne vs. Logan's administrator, 4 Bibb, 402, is referred to as deciding that a devise of land lying out of this State, did not make the devisee liable as such to an action here; and as say *78 ing that such lands would not here be assets in the hands of the heir; and in the case of Harrison vs. Campbell, 6 Dana, 263, the court conclude their answer to the third objection made to the decree, with the following sentence, page 277: “It may be added, however, on this point, that if, asseems probable from the evidence, the mortgage is for the full value of the property, and the equity of redemption even, as between the heir, and the mortgagee worth nothing, it would not have authorized a judgment against the heir for any amount, and the jury might, in that case, find nothing by descent.” From which it is evidently to be implied, that if the equity of redemption, which had descended, were of any value, it would have authorized a verdict that assetts to the amount of its value had descended to the heir; which, as is plain from the whole case, would also have authorized a judgment against the heir for the debts not exceeding the assets. And this,' according to the principle of the cases before cited, and also of the case of Harrison vs. Campbell, could only have been on the ground that the equity of redemption having been rendered, by statute, accessible to an execution against the ancestor, descended to the heir not as equitable assets, as they had formerly been, but as legal assets, and was the proper foundation of a judgment against the heir, because it was accessible to an execution against him, and such, as we think, has been the opinion of this court and of the bar and the country, since equities of redemption have been subjected to execution.
1. The equity of redemption in lands which may descend to heirs, is liable to sale under execution, upon j u d g m e nts against the heirs, ior the debts of the ancestor.
The legal and logical consequence, as it seems to us, of subjecting to legal execution the equity of redemption in the hands of the mortgagor, is that when it descends to his heir it is legal assets in his hands; and this consequence cannot, as we think, be repelled by anything short of the clear indication of a contrary intention in the statute, which imparts to the equity of redemption this important quality ot being liable as a legal estate in the hands of the an *79 cestor. The construction contended for, by which this consequence is repelled, derives its entire support fromthe words, “all the right, &c., which the mortgagor has in said estate,” and in fact limits the effect of the substantial part of the statute, by the literal import of the word has, which, being in the present tense, is said to limit the interestwhich may be levied on and sold, to that which the mortgagor has at the time of the levy, or at least at the time when the execution comes to the officer’s hands. Whence it is argued that as soon as it passes from his hands, whether by death or otherwise, it ceases to be in the condition in which it is subjected to execution. But the thing itself and the proper incidents attached to it, remain the same; and although its condition is in some sort changed, by passing from the hands of the indebted mortgagor, yet its essential character is unchanged, and as it passes into the hands of his heirs, where it is still liable to his debts, and makes the heirs also liable to the extent of its value, there seems to be no decisive reason why the character which the law impressed upon it in his hands, should undergo a change by its transmission to volunteers.
The statute intended to subject to execution the interest of the mortgagor or grantor, in estates held or covered by mortgage or deed of trust, and in construing a clause so evidently abounding in superfluous words, it would be unreasonable to place the whole force of this provision upon the words “which the mortgagor and grantor has” W e think they were intended to mean nothing more than to denote the party whose interest, was to be subjected, and are to be understood as equivalent to the words “of the mortgagor or grantor.” And if any inference is to be founded upon the mere words of the sentence, the subjection of his interest to levy and sale in the same manner as if there were no incumbrance, might sufficiently imply, that it may be subjected in the hands of his heir as well as of himself. If the same manner is to be applied to the levy and sale merely, and not to the *80 subjection of the interest, this restricted application, though it furnishes no aid to our construction of the previous clause, places the levy and sale of an equity of redemption which is properly subj ect, on precisely the same footing as if the land itself, instead of a partial interest in it, were the subject of the levy and sale, and no objection can prevail against the mere form or manner of the levy and sale, which would not be available if any other interest than that of the mortgagor were the subject. And there being no more necessity under the directions of the statute, of stating in the levy and sale the particulars of this interest, than of any other, the objection that the interest was not particularised by a statement of the several mortgages which encumbered the land, is deemed untenable.
2. It is not n e c e s aary, to render the sale of an equity of redemption valid, that the sheriff should specifically set forth in his levy and sale, the amount of the mortgage liens upon the land.
It never has been held, nor as far as we know, supposed that it was the duty of the Sheriff to take upon himself the burthen of ascertaining, and the responsibility of stating the value, or the facts which might determine the value of the incumbered interest to be sold. When he states the interest to be an equity of redemption, or the title to land under mortgage, which is all that is usually done, he of course refers every person concerned to the records. And even if he were to copy or to abr'idge the recorded mortgage or mortgages, or were to read them at the sale, the amount due, the real burthen which affects the value of the interest, would not be thereby ascertained. If sacrifice be the probable and usual consequence of the ordinary mode of proceeding in such cases, this may be a good reason for legislative interposition to change the practice, or to abrogate the proceeding by which the interest of the mortgagor is to be sold. It cannot justify the court in avoiding a levy and sale fairly made in the form established by a practice, authorised by the general or vague language of the statute, and on the validity of which an immence amount of property must depend. Nor is this consideration of probable sacrifice in the sale of *81 mortgaged estates descended to infant heirs, a ground for making a distinction in favor of infants which the statutes have not made, or for saying that an equity of redemption, though subject to execution as a legal estate in the hands of the mortgagor, ceases to be legal, and becomes equitable assets when it descends to his heir, and that it is either not the foundation of a judgment against him, or not accessible to an execution upon such judgment. In short, it does not authorize us, in giving construction to this statute, to keep out of view the general principle and purpose of giving remedy against the heir for the debts of the ancestor, and to limit the effect of this statute, as apart of the system for subjecting lands to the payment of debts, by giving an exclusive meaning to a few words which were probably intended to have a general signification, and by giving, extreme force to the use of a verb in the present tense, which, as frequently and indeed commonly found in statutes, refers not only to the present, but-to all time. The construction by which the statute' has been held not to authorize a sale of the equity of redemption on an execution for a debt secured by the mortgage, is not founded in any considerable degree, if at all, upon any extraneous consideration, but chiefly, if not exclusively, upon the ground that as the necessary effect of such a sale is to diminish or extinguish the incumbrance, which the statute' clearly intends to preserve as paramount to the purchase; such a sale would defeat the manifest intention and objects of the statute, and therefore cannot be regarded as being authorized by it; that it-would tend necessarily to a sacrifice of the mortgagor’s interest, is a consideration connected with the other. The cases referred to on this point do not, therefore, apply to authorize the construction! now contended for. And while itis a source of regret that the statute, as we understand it, may operate, and has perhaps, in the present instance, operated tó cause a sacrifice of the estate of infant heirs., we? *82 cannot adopt the construction by which an equity of redemption descended to infant heirs, is to be wholly exempt from the operation of a judgment and execution against them for their ancestor’s debt. The statute certainly authorizes no discrimination between the case of infant and that of adult heirs. And if an equity of redemption descended to the heir be exempt from levy and sale on a judgment and execution against him for his ancestor’s debt, it must be equally exempt from an execution on a judgment against him for his own debt. That the exemption in this last case would be obviously inconsistent with the manifest objects of the statute, vim think is entirely certain. And this, if there were no other reason in support of .the construction which we have adopted, would, of itself, form a consideration entited to great weight.
3. That an execution omitted to issue for interest, when interest was given held not a sufficient ground to invalidate a sale made under it, when there was no suggestion that there was any other judgm e n t between the parties.
2. The next objection which we shall consider, is that the two executions under which the sales are claimed to have been made, vary slightly from the judgments exhibited as the foundation of them. Both of the judgments appear to have been rendered on the 26th of April, 1845. That which stands first, upon the amended record, is for $1,437 33 — the damages found by the jury, with interest from the day of its rendition. The other is for $4,329 56 — the damages found by the jury with interest from the date of its rendition. The jury, in each case, having found that estate had descended to the heirs, of the value of $5,000. The execution alleged to be founded on the-first judgment, is for the sum of $1,437 62, but omits entirely the interest. The other is for $4,327 56, and also omits the interest. Each bears date on the 14th day of May, 1845, and each was levied on the same tract of land at the same time, or at least on-the same day. The first of these executions-appears to form a part' of the same record which contains the first judgment, and the other to form a part of the record of the second judgment. Each of these records is certified in the usual manner, as *83 being a complete transcript of the proceedings in the particular case. And there is no attempt to show any judgment corresponding more nearly than those above referred to with either of the executions, nor to show any execution corresponding more nearly with either of the judgments. Nor is there any suggestion that there were in fact any other judgments or executions between the same parties. There is then not only a presumption, but there is no ground for serious doubt, that each of these executions was issued upon the judgment above stated, to which it most nearly corresponds. It is obvious, therefore, that the slight discrepancy between the executions and the judgments, was merely a clerical misprision, and although there may be a technical varience, it is to slight, in view of the evidence that these executions actually issued upon the respective judgments with which they so nearly correspond, to be the ground of pronouncing the executions or the sales made under them absolutely void and of no effect.
3. It it objected, however, that the returns on the executions show an uncertainty and confusion in the sales themselves, and an illegality, which should render them void. The return on each execution states a levy and sale of the tract of land for a sum considerably smaller than that which the execution authorized, to be made. Upon compairing the two returns, it appears that both executions were levied at the same time, on the same tract of land, and the returns taken literally import a separate sale and purchase of the entire tract, under each execution, for the separate sums stated in the respective returns, and neither return makes any reference to the sale under the other execution. It was no doubt the duty of the Sheriff to have made but one sale under both executions, and to have credited each ratably, or to have credited on the smaller execution its full amount, and to have credited the other by the remaining proceeds of the sale. And although we do not perceive by what rule, if there was a single sale under both *84 executions, the sum produced was divided between them, yet it would be so absurd as well as unusual and irregular to make on the same day two sales of the same entire tract, upon these two executions of the same date, between the same parties, and presumably both in hand at the same time, that we should be disposed to regal’d the two returns as evidencing an awkward attempt at particularity and specialty in each return, rather than as proving conclusively that there were, in fact, two sales.
4. A Sheriff having two executions in behalf of the same plaintiff, and against the same defendant, returns on each execution the sale'of the same lands. Held, ■that whether he in fact made two Bales or one only there was no irregularity of which the defendants in the execution could icomplain.
But if there were really two separate sales, it is to be presumed that the return of each states the truth with respect to it, showing that the entire tract was sold for the sum named in each return; and as, if there were two sales, the one must have preceded the other, it is clear that the first cannot be affected by the second, however irregular and unauthorized the latter may have been; nor would the defendants in the judgments have any right to complain that the entire proceeds of the first sale were applied to the execution on which it was made. Or if this were a wrong to them, the remedy, if there were no other sale, would be by a correction of the credit and returns, and not by quashing the sale, which certainly would not be rendered void by the improper application of the proceeds. Nor do we perceive that the second sale, however illegal and void, could any more affect, injurously, the interests of the defendants therein, than it could make void the first sale. If the second sale be void, the first, which is valid, determined the right and ascertained the sure terms of a redemption. . And although the returns may not, of themselves, show which sale was first made, this fact, if not presumptively determined by the order in which the judgments or the executions stand on the appropriate records, might be determined as a matter of fact by parol proof, and the failure of the Sheriff to designate the order in which the sales were made could not make either void. Nor, while we deem it certain if two sales were *85 made the last did not invalidate the first, do we decide that even the last was ipso facto void, or that it could have been avoided by the defendants who received the benefit, and were not injured by it. But it is so utterly improbable, either that the Sheriff should have made the two sales, as supposed, or that the plaintiff or his attorney, standing by, should either have permitted this course of action, or should, after purchasing the entire tract under one valid sale, immediately purchase, for an additional sum, the same tract again, under his own execution, of which he had complete control, that it was scarcely necessary to have shown that the fact, if so, would not have avoided both, if either, of the sales, and could not have injured the defendants in the executions.
5. The pendency of a suit to foreclose' a mortgage upon land presents no obstacle to the sale under execution of the equity of redemption, in behalf of another creditor.
4. The obj ection that, at the time of the levy and sale under these executions, a bill was pending for the foreclosure of the mortgages on the land cannot be sustained. The pendency of such a bill did not exempt the equity of redemption from a sale which would still be subject to the effect of the decree upon the mortgage. This principle settled, with regard to the effect of suits for enforcing other liens, seems to be equally applicable to the case of a mortgage, and we so decide. This fact, therefore, did not make the sale void.
5. The objections that the equity of redemption was not subject to execution because there was more than one mortgage; that the levies should have specified the several mortgages; that the levies do not sufficiently describle the land sold; that the Sheriff’s deed does not convey the same land levied on and sold, and that the purchase being made by the attorney of the plaintiff, for him, is therefore void, so far as not already answered, may be answered without a detail, which, as to most of them, would be unprofitable, by the general statementthat they are deemed insufficient, in themselves, or are not sustained by the facts .appearing in this case. One or two other *86 objections, not seriously relied on, need not be stated.
Upon the whole case we are of opinion that the Sheriff’s sales and deed were not void by reason of anything appearing in this record, but that so far as the levies, sales and deed, covered the same land, they were prima facia valid, and sufficient to pass the title from the plaintiffs; and the opinions of the court in giving and refusing instructions, and upon the admissibility or exclusion of the records above referred to being in conformity with the principles of this opinion, therefore the judgment is affirmed.